UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAMITA RAMSEY, | : | Case No. 1:15-cv-575 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| STEVEN MNUCHIN, | : | |
| SECRETARY OF THE TREASURY, *et al.* | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (Doc. 22)**

This civil action is before the Court on Defendants'[1] motion for summary judgment (Doc. 22) and the parties' responsive memoranda (Docs. 37, 39).

## I. BACKGROUND FACTS

Plaintiff Damita Ramsey was a Territory Manager with the Internal Revenue Service ("IRS"), Area C, in Covington, Kentucky. Plaintiff has been employed with the IRS continuously since 1983. Plaintiff claims that she was discriminated against based on her sex (female) and race (African American) and in retaliation for her complaints of discrimination pursuant to Title VII of the Civil Rights Act of 1964. Specifically, Plaintiff alleges that she was denied promotion opportunities to join senior management,

---

[1] Plaintiff filed this action against Jacob J. Lew, Secretary of the Treasury and John Does 1-10. (Doc. 1). On February 13, 2017, Steven Mnuchin was sworn in as the Secretary of Treasury. Therefore, the Court substitutes Secretary Mnuchin in place of Jacob J. Lew. Title VII expressly provides that the sole proper defendant in an employment discrimination action is the head of the appropriate department, agency, or unit. *See* 42 U.S.C. § 2000e-16(c); *McGuiness v. United States Postal Serv.*, 744 F.2d 1318, 1322-23 (7th Cir. 1984) (only proper defendant in Title VII suit is head of agency). Title VII does not permit individual liability. *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995). Accordingly, John Does 1-10 are **DISMISSED** as a matter of law.

did not have her career appropriately developed, and was not permitted to attend a paid mentoring session in Washington, D.C.

On November 22, 2009, Associate Director for Area C, Kelli Key, an African-American female who was the Plaintiff's second line supervisor, selected Plaintiff for a territory manager position. (Doc. 21, Ex. 4 at 2). In August 2011, Ms. Key assigned Plaintiff a mentor. (*Id.* at 5).

Mr. Eaton, a white male, was Plaintiff's first line supervisor. (Doc. 21, Ex. 5 at 3). On August 3, 2011, Mr. Eaton approved Plaintiff's participation in the Federal Executive Board's Diversity Day Program. (*Id.*) In December 2011, Mr. Eaton provided Plaintiff the developmental assignment as the Lead Instructor in the HCO Leadership Course, Fundamental Management Skills. (*Id.*) Mr. Eaton also approved Plaintiff acting on his behalf while he was out of the office for eighteen days in 2011 and 2012 and approved Plaintiff's participation as a mediator in the Share Neutrals Program. (*Id.*) Plaintiff testified that she "didn't have any problems with [Mr. Eaton]," that he did not make disparaging remarks about her or her race or sex, and she could not remember having any conflicts with him. (*Id.*, Ex. 2 at 101-103).

The IRS uses the Senior Manager Readiness Program ("SMRP") as its means for employees to obtain a permanent senior management position. (Doc. 21, Ex. 6). To get into the SMRP, an employee must develop a Career Learning Plan ("CLP") and the

employee's Leadership Succession Review rating must be "ready now." (*Id.* at 1).[2]

Plaintiff's CLP, which was in place beginning in 2011, contained goals for her advancement to senior management. (*Id.*, Ex. 7; Ex. 1 at ¶ 14). Plaintiff's first goal was a 120-day detail to the Associate Area C Director, with an identified start date of January 2, 2011. (*Id.*) As of February 2, 2011, the Plaintiff had a rating of "not ready now." (*Id.*, Ex. 8).

In June 2012, Plaintiff requested a detail to a senior manager position. (Doc. 21, Ex. 1 at ¶ 23). However, no vacant positions existed at the time of Plaintiff's request. (*Id.*, Ex. 5 at 4-5). Mr. Eaton was about to vacate the Area C Associate Director position, but it was permanently filled by Teresa Dickerson, an African American female. (*Id.*) Ms. Key, Ms. Dickerson, and Mr. Eaton all either recommended or approved details for African Americans and/or women on numerous occasions between January 1, 2010 and June 2013. (*Id.*, Ex. 10).

On May 22, 2012, a copy of Internal Revenue Manual ("IRM") Section 6.610.1.6.3, the IRS's policy for requesting credit hours, was sent to the Territory Managers. (Doc. 21, Ex. 11). The email refers to "critical budget challenges" the IRS was experiencing. (*Id.* at 1). A follow-up email was sent to the Territory Managers asking them to ensure that credit hours were approved consistent with IRS policy, which required prior approval for work credit hours. (*Id.* at 2). Despite having been directed not to work credit hours without prior approval on September 9, 2012, Plaintiff submitted

---
[2] If the Agency's manager refuses or fails to develop an employee, it is a violation of the spirit of the Merit Promotion Plan. (Doc. 11 at 22-23).

to Mr. Eaton via email Form 10590, Request for Leave, Credit Hour and Shift Change for 4.3 credit hours she worked on September 9, 2012. (*Id.*, Ex. 11 at 2; Ex. 1 at ¶ 25). Mr. Eaton asked Plaintiff if she had received prior approval to work the credit hours, and informed her that he could not approve the hours if Plaintiff had not received approval in advance. (*Id.*, Ex. 11 at 4-5). Plaintiff informed Mr. Eaton via email that the credit hours were not pre-approved. (*Id.*) Nevertheless, Plaintiff sent two new requests for 4 additional credit hours worked on September 10 and 11, 2012, without receiving approval before they were worked. (*Id.*) Mr. Eaton denied Plaintiff's request on September 11, 2012. (*Id.*, Ex. 1 at ¶ 25).

In July 2012, Teresa Dickerson, an African American female, became the Associate Area C Director. (Doc. 21, Ex. 1 at ¶ 17; Ex. 12 at 1). Ms. Dickerson managed Plaintiff for only a short time because Ms. Dickerson went on FMLA leave from September 7, 2012 through January 6, 2013. (*Id.*, Ex. 12 at 3).

On August 28, 2012, Ms. Key sent a link to the Treasury's Human Capital Community website to employees reporting to her, with the intent that the employees add the site to their favorites list. (Doc. 21, Ex. 13). Attached to the link was a flyer promoting a four-hour Flash Mentoring Event to those employees in the Washington D.C. commuting area. (*Id.* at 3). The flyer instructed those interested to consult with their manager before registering for the event. (*Id.*) Less than one hour later, Plaintiff sent in her registration for the event. (*Id.*, Ex. 13 at 3-4). Sixteen minutes later, after registering, Plaintiff sent Ms. Dickerson an email indicating that she wanted to attend the

4

event, and asking who would pay her travel expenses.  (*Id.* at 3).  In an email dated August 30, 2012, Ms. Dickerson denied Plaintiff's request to attend the Flash Mentoring Event because management had not offered the session to the Plaintiff to attend.  (*Id.*, Ex. 14 at 1).  On September 5, 2012, Ms. Dickerson explained to Plaintiff that she would not approve the Plaintiff to attend the event at the government's expense; however, she could take annual leave if she wanted to attend at her own expense.  (*Id*. at 6).  Ms. Dickerson informed Plaintiff that a moratorium existed on anything but pre-approved mission-critical travel.  (*Id.*)  Ms. Dickerson later approved Plaintiff's request for annual leave to attend the event.  (*Id.*, Ex. 1 at ¶ 17).

Dickerson and Key received notice that Plaintiff wanted to file an EEO complaint on August 30, 2012, via email asking for an EEO counselor to be assigned.  (Doc. 31 at 92-98).  Plaintiff subsequently filed an EEO complaint against Ms. Dickerson; and Ms. Key had notice and knowledge of the EEO activity.  (*Id.* at 44).

From September 17 through 21, 2012, Plaintiff was scheduled to participate as the lead instructor in a leadership training course in Fresno, California.  (Doc. 21, Ex. 15 at 3; Ex. 1 at ¶ 27).  The week prior to the training (September 10-14), Plaintiff was scheduled to prepare for the training.  (*Id.*)  Plaintiff also scheduled meetings with both her staff and Ms. Key during the same week.  (*Id.*)  Plaintiff did not inform her staff that she would be out of the office.  (*Id.*)

During the time Plaintiff was a Territory Manager, Ms. Dickerson claimed that Plaintiff had difficulties managing her subordinate employees.  (Doc. 21, Ex. 17 at 4; Ex.

5 at 7-9). On or around November 2012, Ms. Key had a climate review conducted with the Plaintiff's staff to address her employees' complaints. (*Id*., Ex. 18 at 1). Ms. Key had a facilitator come in to help address her concerns with the Plaintiff's team in late 2012. (*Id*., Ex. 5 at 17-18). The facilitator was still working with Plaintiffs' team in April 2013. (*Id.*, Ex. 19 at 6).

On January 25, 2013, Plaintiff was provided Performance Feedback and an Action Plan that highlighted numerous problems with her performance. (Doc. 21, Ex. 20).

On March 12, 2013, a new procedure for work details was created. (Doc. 21, Ex. 9 at 3-4). Instead of following the procedure and applying to the announcement, on March 29, 2013, Plaintiff notified Ms. Dickerson that she found a detail for a Department Manager position in the Wage and Investment Division and informed her that the Director, Jim Rogers, was expecting Ms. Dickerson's call. (*Id*., Ex. 19 at 3-5). In an April 1, 2013 response to the Plaintiff, Ms. Dickerson referenced Plaintiff's on-going performance issues, and posed some questions she thought the Plaintiff should consider before going on a detail to another division. (*Id.*) Ultimately, Ms. Dickerson referred Plaintiff to the Director, Dora Trevino, to address the request. (*Id*., Ex. 9 at 4). Ms. Trevino spoke with Mr. Rogers and approved Plaintiff's detail request effective June 9, 2013. (*Id.* at 3-4).

On June 3, 2015, the EEOC issued an Order granting summary judgment against Plaintiff. (Doc. 21, Ex. 1 at ¶ 10). A final order was issued on June 10, 2015. (*Id.*) Plaintiff proceeded to file suit with this Court. (*Id.*)

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III. ANALYSIS

### A. Race and Sex Discrimination Claims

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "because of…race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In a Title VII case, a plaintiff bears the ultimate burden of persuading the fact-finder that the defendant intentionally discriminated against her. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). A plaintiff may carry the burden by: (1) introducing direct evidence which shows that in treating a plaintiff adversely, the defendant was

7

motivated by discriminatory intent; or by (2) introducing circumstantial evidence that supports an inference of discrimination. *Logan v. Denny's Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001).

### 1. *Direct evidence of discrimination*[3]

Plaintiff claims that she presents both direct and circumstantial evidence of discrimination. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). Specifically, Plaintiff alleges the following evidence of direct discrimination: (1) Teresa Dickerson's comment "you're just a chocolate drop"; (2) intentional delay in processing Plaintiff's EEO complaint; and (3) refusal to assign Plaintiff to work details in order to develop her career.

**a. Chocolate Drop**

First, Plaintiff claims that Teresa Dickerson referred to her as a "chocolate drop," which references her "color and race." (Doc. 37 at 3).

However, Plaintiff verified in responses to interrogatories that Ms. Dickerson made the statement "you must think *I'm* a chocolate drop." (Doc. 39, Ex. 1, Interrogatory

---

[3] Plaintiff appears to argue for the application of a mixed motive standard here. In a mixed-motive discrimination claim, both legitimate and illegitimate reasons are alleged to have motivated the adverse employment action. *Lopez v. Am. Family Ins. Co.*, 618 F. App'x, 794, 799 (6th Cir. 2015). In order for a court to apply the mixed motive standard, there must be some evidence of discriminatory bias with a connection to the adverse employment action. *Id.* at 800. Here, Plaintiff puts forth no evidence of discriminatory bias, whether direct or circumstantial.
.

15) (emphasis added).[4]  In her deposition, Plaintiff clarified that in making the statement Ms. Dickerson was referring to herself, not the Plaintiff.  (*Id*., Ex. 2 at 74).  Accordingly, this statement, does not establish direct evidence of discrimination.

### b. Intentional delay in processing EEO complaint

Next, Plaintiff claims that her EEO complaint was intentionally delayed.  Plaintiff intended to file a claim on August 30, 2012.  (Doc. 36 at ¶ 42).  However, Plaintiff's supervisors, as parties named in the EEO claim, were ethically constrained from conducting any investigation of the claim against them and instead referred the claim to an independent counselor eight business days later, on September 10, 2012.  (*Id.* at ¶¶ 46, 49).  While Plaintiff claims that the eight day "delay" had a chilling effect on her EEO process, there is no evidence in the record that the process did not proceed as anticipated with a full investigation and review.  *Leeds v. Potter*, No. 1:04cv429, 2006 U.S. Dist. LEXIS 72348, at *19 (S.D. Ohio Oct. 4, 2006) (a two week delay in the submission of an EEO claim is not a reason to permit an equitable tolling defense to proceed).  Moreover, there is no evidence in the record that any delay occurred because of Plaintiff's gender, race, or EEO status.  Accordingly, the alleged delay in processing the EEO complaint is not evidence of direct discrimination.

---

[4] Plaintiff admits that Dickerson is also African-American.  (Doc. 37, at 4 fn 1).

### c. Career development

Finally, Plaintiff alleges that her supervisors discriminated against her by failing to prepare her for a senior management-level position, because they did not allow her to go on a detail, attend an out-of-town training, or receive credit hours.

The record shows that all three supervisors either recommended or approved details for African Americans and/or women on numerous occasions between January 1, 2010 and June 2013. For example, David Eaton recommended details for an African American man on three separate occasions. (Doc. 21, Ex. 10). Teresa Dickerson (who is African American), recommended or approved details for African-American females on three occasions. (*Id.*) Kelli Key (who is African American) recommended or approved details for one African-American male (on three occasions) and two African-American females. (*Id.*) With regard to the Plaintiff, Mr. Eaton recommended and Ms. Key promoted her to temporary promotions in 2008 and 2009.

Specifically, Plaintiff maintains that Mr. Eaton stated that he "could not afford to let [the Plaintiff] go" to a detail work assignment because "she was his most senior manager[.]" However, Mr. Eaton's alleged statement is not evidence of direct discrimination because the comment itself does not display a discriminatory or retaliatory attitude and lacks a nexus to any of the protected bases identified in the Plaintiff's complaint (race, sex, or EEO activity).

## 2. *Prima facie* case

Where a plaintiff has presented only circumstantial evidence, as Plaintiff has done in this case, the burden shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) applies. Under this framework, the plaintiff has the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Johnson v. United States Dep't of Health & Human Servs.*, 30 F.3d 45, 47-48 (6th Cir. 1994).

To prove a *prima facie* case of race and sex discrimination, Plaintiff must prove: (1) that she is a member of a protected group; (2) that she was subject to an adverse employment decision; (3) that she was qualified for the position; and (4) that she was replaced by a person outside the protected class or that similarly situated non-protected employees were treated more favorably. *Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002). After establishing a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994). If the defendant meets this burden, the plaintiff must then show that defendant's articulated reason is false pretext for discrimination. *Id.* at 1083 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)).

Defendant only contests one element of the *prima facie* case, arguing that Plaintiff is not qualified for the position which she sought to hold. Defendant argues that Plaintiff was not qualified to be in senior management, because she was having trouble with both her performance and her management style. For example, on June 26, 2012, Mr. Eaton

provided Plaintiff with a memorandum entitled "Leadership Development and Feedback" which outlined her fundamental judgment deficiencies. In November 2012, Ms. Key had a climate review conducted with Plaintiff's staff to address numerous complaints from her employees. Ms. Key had a facilitator help address her concerns with the Plaintiff's team in late 2012. The facilitator was still working with Plaintiff's team in April 2013. On January 25, 2013, Plaintiff was provided Performance Feedback and an Action Plan that highlighted numerous problems with her performance.

Plaintiff claims that there is a question of fact regarding whether she was qualified to be in senior management, because she received a Memorandum of Appreciation from Mr. Rogers, Field Director, touting what a wonderful job she had done in a job detail. (Doc. 37, Ex. T). However, the submission of materials from a co-worker or supervisor indicating that an employee's performance is satisfactory does not create a material issue of fact. *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 729 (6th Cir. 1999).

### *3. Legitimate non-discriminatory reasons*

Assuming, *arguendo*, that Plaintiff established a *prima facie* case of race and sex discrimination, the burden shifts to the Defendant to articulate legitimate non-discriminatory reasons that Plaintiff was not promoted.

First, with regard to Plaintiff's request for detail and development, while Plaintiff never received her desired detail to the Associate Director position, the record shows that she was "not ready" for the detail, a rating she did not challenge. (Doc. 21, Ex. 8). Additionally, Plaintiff's claim that she was not developed between 2010 and 2012 is

eviscerated by the fact that she received acting assignments, training, and developmental assignments to assist her in becoming ready for the detail. And, specifically, on November 22, 2009, Plaintiff was permanently selected for the Territory Manager position by Ms. Key. (Doc. 21, Ex. 4 at 2). In 2009 and 2010, Plaintiff was given the opportunity to develop her skills presenting at a conference in Louisville, Kentucky and attending a "Train-The-Trainer" course. Additionally, Ms. Key approved a developmental opportunity for Plaintiff to give a sexual harassment presentation in Austin, Texas. Plaintiff had similar developmental opportunities in 2011. Ms. Key approved the Plaintiff's training in Leading Teams from May 3-4, 2011 and an EEO Overview presentation at the CAMC Leadership Development Program on May 19, 2011. Ms. Key also approved Plaintiff's registration for the Train-The-Trainer Certification on September 13-14, 2011. Mr. Eaton permitted Plaintiff to participate in FEB's Diversity Day Program on August 3, 2011, approved her to lead the December 2011 FMS Course, and approved her participation as a mediator in the Shared Neutrals Program. (Doc. 21, Ex. 5 at C). Mr. Eaton also detailed Plaintiff to act in the Associate Director position on eighteen occasions in 2011 and 2012. (*Id*.)

Second, as to Plaintiff's claim of discrimination when she was not approved to attend the Flash Mentoring Event in Washington, D.C., the record shows that the event was advertised for employees working in the Washington, D.C. area only; and contrary to specific instructions, Plaintiff registered before consulting with her manager.

Third, regarding Plaintiff's claim that management failed to provide a timely and clear response to her request for travel authorization to Washington, D.C., Plaintiff provides no evidence of any requirement that such a request be responded to immediately. Nevertheless, on August 30, 2012 (two days after Plaintiff's original request), Ms. Dickerson responded with an email denying Plaintiff's request to attend the event. (Doc. 21, Ex. 14 at 1). Even if the email response was not clear, Plaintiff received an unequivocal denial of her request both verbally and in writing on September 5, 2012, just over a week later. (*Id.* at 6). Therefore, there is no evidence that the denial of funding to attend the Flash Mentoring Event was objectively untimely.

Fourth, Plaintiff's request for approval of credit hours after she worked them was not discriminatory, because such a request was improper pursuant to IRS policy. *See* Internal Revenue Manual ("IRM") § 6.610.1.6.3. The policy states that "all credit hours worked and used must be approved in advance by management." IRM § 6.610.1.6.3(4). Although Plaintiff was told twice what the credit hour policy was, on September 9, 2012, she submitted a request for the 4.3 credit hours she worked after she had worked them. (Doc. 21, Ex. 1 at ¶ 25). Plaintiff then submitted two more requests for an additional 4 credit hours for work performed on September 10 and 11, right after Mr. Eaton informed Plaintiff (on September 10) that he was not approving her September 9 request, because the hours were worked without advance approval. (*Id.*, Ex. 11 at 4-5). Therefore, Mr. Eaton reasonably denied Plaintiff's requests after learning that Plaintiff had not sought approval to work the credit hours in advance.

14

Finally, management's response to the Plaintiff's request for a developmental detail in April 2013 was not discriminatory. Plaintiff's email request for the detail was approved, despite the fact that the request did not comply with the procedure for details. Specifically, Ms. Dickerson did not refuse to allow the detail; instead, she referred the Plaintiff to Ms. Trevino to address the request. (Doc. 21, Ex. 9 at 4).

### *4. Pretext*

Once the Defendant has articulated legitimate non-discriminatory reasons for its actions, the burden shifts back to the Plaintiff to establish pretext.

Plaintiff may establish that the proffered reasons are mere pretext by showing that: (1) the stated reason had no basis in fact; (2) the stated reason was not the actual reason; or (3) the stated reason was insufficient to explain defendant's action. *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998). The pretext inquiry evaluates whether the legitimate business reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To make this showing, "the plaintiff must … put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001).

Plaintiff cannot establish that any of Defendant's legitimate reasons for its employment actions were pre-textual. Specifically, there is nothing to demonstrate any

15

connection to Plaintiff's race, sex, or prior EEO activity. Accordingly, Plaintiff's claims for race and sex discrimination fail as a matter of law.

B. Retaliation

To prove a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) she engaged in a protected activity under Title VII; (2) defendant was aware of the activity; (3) plaintiff was subject to an adverse employment action; and (4) there was a causal nexus between plaintiff's protected activity and the adverse employment action. *Donald v. Sybra, Inc.,* 667 F.3d 757, 761 (6th Cir. 2012).

To prove a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) she engaged in a protected activity under Title VII; (2) that the defendant knew of her protected conduct; (3) that the defendant took an adverse employment action against her after her protected conduct; and (4) that there was a causal connection between the exercise of Plaintiff's protected right and the adverse employment action taken by the defendant. *Garner v. Cuyahoga Cnty. Juvenile Court*, 544 F.3d 624, 639 (6th Cir. 2009). Defendant concedes that Plaintiff can establish the first and second prongs of her *prima facie* case. However, Defendant argues that Plaintiff cannot establish the third and fourth prongs.

*1. Prima facie case*

Defendant concedes that the Plaintiff engaged in protected activity and that it was aware of that activity. However, Defendant asserts that there is no evidence in the record

to suggest that any of the management officials took action against the Plaintiff because of her engagement in the EEO process. The Court agrees.

To establish a causal connection, a plaintiff must produce sufficient evidence for one to infer that the defendant would not have taken the adverse employment action had the plaintiff not engaged in the protected activity. *Barrett v. Lucent Tech., Inc.*, 36 F. App'x 835 (6th Cir. 2002). Relevant factors to consider when determining causation include evidence that the employer treated the plaintiff differently than similarly situated employees, or that the adverse action was taken shortly after the plaintiff's exercise of protected rights. *Moon v. Transport Drivers, Inc*., 836 F.2d 226, 230 (6th Cir. 1987).[5]

Plaintiff has three EEO complaints, two of which were resolved in July and August 2007, and the instant complaint which was filed in September 2012. Plaintiff alleges that the retaliation began in 2010, three years after the first two complaints, and years before the third. Shortly after the Plaintiff's EEO activity in 2007, she received four temporary promotions that ultimately led to her permanent promotion to Territory Manager in 2009, all approved by Ms. Key. Plaintiff's first detail began on September 28, 2008, a little more than one year after prior EEO activity involving Ms. Key was resolved. Therefore, there is insufficient temporal proximity to infer a nexus to

---

[5] *See also See e.g., Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007) (temporal proximity "does not exist" when a multi-year period exists between protected conduct and adverse action); *Strouss v. Michigan Dep't of Corr*., 250 F.3d 336, 344 (6th Cir. 2001) (rejecting three-year gap between protected activity and alleged retaliation as creating inference of retaliatory motive).

Plaintiff's 2007 EEO activity.[6] Moreover, Ms. Dickinson did not become the Plaintiff's second level manager until July 2012.[7]

Plaintiff claims that there is a genuine issue of material fact with respect to her retaliation claim because of the actions taken against her between when she initiated EEO counseling on August 30, 2012, and the assignment of the investigator on September 10, 2012. (Doc. 37 at 13). However, Plaintiff's claim about not receiving a detail in June 2012 predates when she sought pre-complaint counseling on August 30, 2012, thus no causation exists as to this claim by temporal proximity. For the remaining claims that follow when she sought pre-complaint counseling on August 30, 2012, Plaintiff has failed to establish other indicia of alleged retaliatory intent apart from timing. For example, the evidence demonstrates that Plaintiff knew about the credit hour approval policy prior to August 2012, but failed to follow the policy. Likewise, Plaintiff knew that she could not attend the Flash Training Session without receiving her manager's approval, but registered nonetheless. Therefore, Plaintiff cannot establish the causation necessary to establish a *prima facie* case of retaliation.

---

[6] "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (finding temporal proximity to be sufficient evidence of causation where termination occurred on the same day the employer learned of the protected conduct).

[7] The Court notes that although Plaintiff identified Ms. Dickerson and Ms. Key as having retaliated against her based on her EEO activity, they had both engaged in prior EEO activity as well. (Doc. 22 at 12).

## *2. Pretext*

Assuming, *arguendo*, that Plaintiff established a *prima facie* claim for retaliation, the Court considers pretext.

Plaintiff attempts to prove pretext by claiming that the challenged actions occurred because she engaged in EEO activity. (Doc. 37 at 11-12). Even if true, this does not prove that her race and sex were motivating factors in the challenged actions. Further, Plaintiff cannot prove pretext because Defendant's proffered reasons have a basis in fact. Specifically, Defendant has a process for identifying whether individuals are ready for leadership assignments and they also have credit hour, managerial approval, and travel policies.[8] Plaintiff's disagreement with the application of these policies does not mean that Defendant's reasons lack a basis in fact. *See, e.g., Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006).

While Plaintiff seeks to compare herself to Holcomb Roderick, an employee permitted to travel, Mr. Roderick testified that his travel was almost entirely local and subject to the government's budget constraints. (Doc. 33 at 20). Accordingly, Plaintiff fails to evidence that the Defendant treated similarly situated employees more favorably than her. For these reasons, Plaintiff's claim for retaliation fails as a matter of law.

---

[8] Plaintiff testified that she is familiar with these policies. (Doc. 33 at 55-58).

## IV. CONCLUSION

Accordingly, for these reasons, Defendant's motion for summary judgment (Doc. 22) is **GRANTED**. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED**.

Date: 6/26/17

_____
Timothy S. Black
United States District Judge